THE BERLIN MACHINE WORKS, Appellant, vs. PERRY, Respondent.

*March 29 — April 17, 1888.*

*Contracts: Public policy: Sale of patents, etc.: Covenant in restraint of trade.*

The defendant, a carpenter and joiner and inventor of sand-papering machines, sold his interest in certain patents upon such machines and in the business of a firm engaged in the manufacture and sale thereof.   In the contract of sale he covenanted that he would not thereafter "manufacture, sell, or cause to be sold any sand-papering machines of any description," unless with the consent of the purchaser of said patents, etc.   *Held:*

(1) The restriction upon the manufacture and sale of the machines cannot be held to be applicable only to this state.

(2) If the defendant should invent and patent a new sand-papering machine, not infringing on the patents sold, and should sell the patent therefor to one who should manufacture and sell machines under it, he would thereby *cause* the machines *to be sold,* within the meaning of the covenant.

(3) The restriction being greater than is reasonably necessary to protect the purchaser in the enjoyment of the patents and business purchased, and prohibiting the defendant from pursuing his trade or profession of inventing sand-papering machines, is void as against public policy, although it affects only a single class of machines.

APPEAL from the Circuit Court for *Jefferson* County.

This appeal is by the plaintiff from an order sustaining a general demurrer to the complaint.   The case stated in the complaint is substantially as follows:

In February, 1884, and previously, the defendant, *James*

*L. Perry*, and one Charles A. Mather were engaged, at Berlin, Wis., as partners, in the manufacture and sale of wood-polishing and sand-papering machines of which *Perry*, either solely or jointly with others, was the inventor, and upon which he then held and owned five letters patent issued to such inventors by the United States. These machines were bulky and expensive, a large capital was required to carry on the successful manufacture and sale of them, and they were only sold and used in large cities. It is not alleged that the business extends beyond the United States. In February, 1884, *Perry* sold his interest in such business, with the good-will thereof, also in all the property of the firm, in the letters patent before mentioned, and in an application for another patent then pending before the United States commissioner of patents, for the sum of $20,000. The contract of sale contained a stipulation by *Perry* to apply for letters patent on another invention of his, being "improvements in sand-paper machines and planer combined, for cleaning sashes, doors, and blinds," etc., and, when obtained, to assign such letters patent to Mather. This stipulation is of no importance on this appeal. The material stipulation in the contract of sale is to the effect that *Perry* "will not hereafter manufacture, sell, or cause to be sold any sand-papering machines of any description" unless with the consent of Mather. The plaintiff corporation has acquired, by mesne assignments and transfers, the whole interest in the business, including the interest thus sold by *Perry* to Mather, and the benefit of the stipulation last above mentioned, and is now carrying on the business under the same letters patent, at Berlin aforesaid. *Perry* is a carpenter and joiner by education and trade, and formerly carried on a certain business in that line. He is the inventor, solely in some cases, and jointly with another person in others, of the devices and machines covered by the letters patent above mentioned. He resides in Watertown, Wis., sixty miles distant from Berlin aforesaid.

The cause of action alleged in the complaint, and the prayer for relief, are that "Notwithstanding said promise and agreement on the part of the defendant as aforesaid, whereby, for the consideration aforesaid, he promised and agreed not to manufacture, or sell, or cause to be sold, any sand-papering machines of any 'description, without the written consent of said Mather, the defendant, without the consent in writing or otherwise of said Mather, his heirs, or representatives, or any of the assigns of said agreement (including this plaintiff), wrongfully and unjustly, and contrary to his said undertaking, promise, and agreement, and to the great past, present, and prospective injury and damage of this plaintiff, has since several weeks before the commencement of the suit been, now is, and threatens to continue to be, engaged, at Watertown aforesaid, in the manufacture and sale of sand-papering machines of the same general character and for the same purpose as the sand-papering machines now and heretofore manufactured by plaintiff under said patents in the carrying on of said business as aforesaid, but which machines so manufactured by defendant are constructed so slightly different from the devices described and claimed in said patents as to evade liability under the laws of the United States enacted to protect patentees, their heirs and assigns, from infringements of their patents; which machines so manufactured and being manufactured by defendant, defendant has been and is still wrongfully and unjustly offering for sale, and, as plaintiff is informed and believes, has at Watertown aforesaid, sold several of said machines, among others to Nonnast & Co., of Chicago, Ill., and to Meyers & Co., also of Chicago, Ill., and to other persons, residents in Wisconsin and elsewhere, whose names are unknown to the plaintiff; all of which has been and is of great pecuniary injury and damage to plaintiff, in the sum of several thousands of dollars; and the manufacture and sale of such machines by

defendant, if continued, will be of great and irreparable injury to the plaintiff, in and by taking away and depriving him of his trade, lessening his business, reducing his profits, increasing his expenses, and otherwise damaging his said business and interests. Wherefore plaintiff prays that defendant be enjoined from manufacturing, selling, or causing to be sold, by himself, his servants, or agents, any sandpapering machines of any description whatever, and the plaintiff have judgment for his damages, and costs and disbursements herein, and for such other relief as appears just and proper."

For the appellant there were briefs by *Erwin & Benedict*, attorneys, and *Joshua Stark*, of counsel, and oral argument by *Mr. C. T. Benedict*.

For the respondent there were briefs by *Hall & Skinner*, attorneys, and *Gregory, Bird & Gregory*, of counsel, and oral argument by *Daniel Hall* and *Geo. W. Bird*.

Lyon, J. The only object of this action is to obtain an injunction perpetually restraining *James L. Perry*, the defendant, " from manufacturing, selling, or causing to be sold sand-papering machines of any description," which he covenanted with Charles A. Mather not to do, but which he has done and threatens to continue to do, contrary to the terms of such covenant. Counsel for defendant maintain that the covenant is not assignable, and hence that no one but Mather can have an action for the breach of it. We do not determine the question, but assume, for the purposes of the case, that the plaintiff corporation may maintain an action for such breach, just as Mather could have done had he not assigned his interest in the covenant.

Thus assuming the assignability of the covenant, the only question to be determined is whether it is binding upon the defendant. That is to say, Is it a covenant which it was competent for the defendant to make? or is it invalid as

against public policy? The covenant is general and unrestricted. It binds the defendant, unless Mather consent in writing that he may do so, not to "manufacture, sell, or cause to be sold, any sand-papering machines of any description." The prohibition is not qualified or limited by time, place, or circumstance. It is as general and comprehensive as can be expressed by language. It has no relation to the sale of a business secret, or any infringement of a trade-mark or patent.

The law undoubtedly is that the covenant under consideration, *prima facie* at least, is void, and will be so held on demurrer unless the party asserting its validity has averred facts in his complaint from which the court can say the restriction is not larger than is reasonably necessary for the protection of Mather in the enjoyment of the business and patents he purchased of the defendant. If it extends beyond that it is unreasonable and the covenant is void. In view of the averments of the complaint we think the restriction does extend far beyond that limit. It would be a breach of the covenant were the defendant to manufacture, sell, or cause to be sold any kind of sand-papering machines in Canada or Mexico, or at any point in the eastern hemisphere, although the complaint shows that the plaintiff's business, assigned to it by Mather, is confined to the United States. Again, should the plaintiff abandon its business, and should the manufacture and sale of machines under the patents thus sold by defendant to Mather cease entirely, it would still be a breach of the covenant were the defendant to manufacture and sell a sand-papering machine in any place, although it did not infringe any of such patents. Furthermore, the covenant does not limit the prohibition to such machines as would or might come in competition with Mather's business. The defendant might be able to invent a sand-papering machine applicable to uses to which those made by Mather and the plaintiff were not adapted. What

reason can there be for restricting him from doing so, if he is not in competition with the business he sold to Mather? We perceive none.

But it is claimed that this case is not within the above rule for several reasons. These will now be considered.

1. An argument is predicated upon the averment in the complaint that the defendant is a carpenter and joiner and had formerly worked at that trade. It is claimed that no restraint he might impose upon himself in respect to any other business or employment could be unlawful. There is no such rule of law. Besides, the complaint shows that he is also an inventor of sand-papering machines. The law would protect him against illegal restrictions in respect to the latter business just as readily as it would against such restrictions affecting his business as a carpenter and joiner, and on the same principles. The point is scarcely worthy of notice.

2. It is also urged that there is nothing in the covenant in question which interferes with the right of the defendant to invent other sand-papering machines, not infringing the patents sold to Mather, and to sell the inventions. It is said that such purchaser might manufacture and sell the after-invented machines without working thereby a breach of the covenant. It seems to us that this would be a very dangerous concession for the plaintiff to make were the covenant valid. It points out an easy way to make the covenant worthless. But we think the concession improvidently made. We are quite clear that if the defendant invents a machine for which he obtains letters patent, and sells the patent to one who makes and sells machines under it, the defendant thereby causes the machine to be sold, within the meaning of his covenant with Mather.

3. Neither is the position tenable that the courts of this state will consider the restriction as applicable only to Wisconsin. Were the covenant valid, our courts would take

cognizance of a breach thereof committed in any other state or country the same as though committed in this state.

4. An alleged rule to the effect that restrictions of the character under consideration, if made as incidental to the sale of patents and a business thereunder, are valid, no matter how general and unlimited such restrictions may be, is invoked to uphold this covenant. But the cases cited to sustain such a rule do not sustain it as broadly as claimed. They hold that such restriction is valid only when, in the judgment of the court, it is not unreasonable, due regard being had to the subject matter of the covenant. Tested by that rule we have seen that the restriction in this case is not a reasonable one, because not necessary to the protection of the covenantee. In other words, this restriction is not, in any correct sense of the term, incidental to the sale of patents and a business thereunder, but reaches far beyond the point of just and lawful protection to such business.

5. It is also urged that because the restriction affects only a single class of machines, and does not cover the trade of a machinist, it is not within the rule which vitiates contracts in restraint of trade. The position cannot be sustained. While the restriction relates only to sand-papering machines, the defendant is an inventor of such machines, and the covenant unreasonably and unnecessarily prohibits him from pursuing his trade or profession. It is, therefore, within the rule that such covenants are void.

We do not feel called upon to go into a discussion of the history of the law concerning contracts in restraint of trade, or the grounds upon which the rules above stated are founded. It would be an agreeable task to elaborate these subjects, did the exigencies of the case require it. This has been well done, however, in a late treatise of much merit. Greenhood on Public Policy, part XIV, ch. 6. The author has there cited and collated practically all the cases in Eng-

land and this country on the subject of contracts in restraint of trade. These cases are very numerous. The most of the materials for the very elaborate and able briefs of the respective counsel seem to have been drawn from this treatise. We have deemed it unnecessary to cite cases to each rule laid down in this opinion, believing it sufficient to refer to Mr. Greenhood's work where the cases will be found intelligently classified and arranged under proper heads.

*By the Court.*— The order sustaining the demurrer to the complaint is affirmed.